

AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
SEP - 6 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Samsung Cellular Telephone<br>Model: A510M<br>IMEI: 356017072637238 | ) ) ) Case No.<br>) )<br>) **19MJ3809** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____California____ *(identify the person or describe property to be searched and give its location):*  See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ____21____ U.S.C. § ____952 and 960____ , and the application is based on these facts:  See Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Nicholas A. Zelinsky Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/6/19

City and state: San Diego, California

*Judge's signature*

HON. BARBARA L. MAJOR
*Printed name and title*



## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Nicholas A. Zelinsky, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A ("**Target Device**"), and seize evidence of violations of federal law, namely Title 21 U.S.C. §§ 952, 960 and 963, as further described in Attachment B:

> Samsung Cellular Phone
> Model No. A510M
> IMEI 356017072637238
> ("**Target Device**")

This search warrant supports an investigation and prosecution of Gladis Esmeralda LUNA-Mejia ("LUNA-Mejia"), who is charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Device** from LUNA-Mejia on August 18, 2019, when she was arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. Specifically, LUNA-Mejia was found in possession of approximately 24.54 kilograms of cocaine hidden in the vehicle that she was driving. The **Target Device** has been securely stored since its seizure and is currently in the possession of the Department of Homeland Security, 880 Front Street, San Diego, California 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts

believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated. Dates and times are approximate.

## TRAINING AND EXPERIENCE

5. I am a Special Agent (SA) with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Costa Pacifico Money Laundering Task Force Group 2, in San Diego, California and I have been employed with HSI since 2018. My current responsibilities include conducting criminal investigations of money laundering, narcotics smuggling and bulk cash smuggling of illicit proceeds on the Southwest Border. I am a "law enforcement officer of the United States" under 18 U.S.C. § 2510(7), empowered to investigate and make arrests for offenses enumerated in 18 U.S.C. § 2516. I also regularly work with other state and federal law enforcement partners including, but not limited to, the Federal Bureau of Investigation (FBI), the Bureau of Alcohol, Tobacco and Firearms and Explosives ("BATFE") and the Drug Enforcement Administration ("DEA"). I am currently assigned to the San Diego Narcotics Enforcement Team (SDNET), which is a multi-jurisdictional task force comprised of local, state and federal law enforcement tasked with the investigation of major narcotics traffickers in and around San Diego County.

6. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator's Training Program (CITP) as well as the HSI Special Agent Training Academy (HSISAT). Prior to becoming a Special Agent, I was employed with the Mississippi Bureau of Narcotics (MBN) as a Narcotics Agent. I am a graduate of the Mississippi Law Enforcement Officer's Training Academy (MLEOTA), the MBN State Police Academy, and have taken multiple courses in interrogation, narcotics investigations, and undercover investigations at the Regional Counter-Drug Training Academy (RCTA)

stationed in Meridian and Hattiesburg Mississippi. During the course of my employment with MBN I have conducted multiple criminal investigations involving illicit narcotics distribution and trafficking, organized criminal activity, money laundering and firearms trafficking. I have conducted multiple investigations with the United States Postal Inspection Service (USPIS), combatting Drug Trafficking Organizations (DTO'S) and executing controlled narcotics deliveries to residences.

7. Through my employment with MBN, I acted in an undercover capacity in multiple investigations to include illicit narcotics distribution as well as firearms trafficking. I have participated in investigations, which have resulted in criminal prosecutions. Additionally I have made arrests, drafted affidavits, for search and seizure warrants, arrest warrants, prepared reports in state and federal proceedings, and have provided sworn statements in state and federal proceedings.

8. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, and tablets, to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, I am also aware that:

    a. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are mobile, and they have instant access to telephone calls, text, web, email, and voice messages;

b. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug traffickers and their accomplices will use digital devices like cellular telephones, tablets, and laptop computers because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f. The use of digital devices like cellular telephones, tablets, and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Individuals involved in the illegal possession and acquisition of drug trafficking often utilize digital devices like cellular telephones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, drugs, criminal proceeds, and assets purchased with criminal proceeds.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text

communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

   a. tending to indicate efforts to import cocaine, or some other federally controlled substances from Mexico into the United States;
   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substances from Mexico into the United States;
   c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substances from Mexico into the United States;
   d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;
   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a

smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

13. On August 18th, 2019, at approximately 10:35 a.m., Gladis Esmeralda LUNA-Mejia ("LUNA-Mejia"), a Mexican National, applied for entry into the United States from Mexico through the San Ysidro Port of Entry ("POE") in vehicle lane #12. LUNA-Mejia was the driver, accompanied by a juvenile, of a 2014 Toyota Sienna ("the vehicle") bearing a Mexican license plate

14. A CBP Canine Enforcement Officer (CEO) was conducting pre-primary operations when his Human and Narcotic Detection Dog (HNDD) alerted to the rear lift gate of the vehicle. The CEO requested the assistance of a CBP Officer ("CBPO") based on the alert.

15. A CBPO responded to the vehicle in lane number 12 and met with the CEO and his HNDD. LUNA-Mejia told the CBPO that she had nothing to declare and explained she was coming to San Diego, California to shop. The vehicle was subsequently referred to secondary for further inspection.

16. Within the secondary lot, the vehicle was driven through the Z-Portal X-Ray machine operated by a CBPO. The scan revealed anomalies within the center of the

vehicle's roof. This information was relayed to the secondary lot CBPO's. LUNA-Mejia was removed from the vehicle and escorted to the security office while the vehicle was inspected further.

17. An additional inspection of the vehicle revealed anomalies in the vehicle's roof. A CBPO used a meter "buster" in the center of the roof and found unusually high density readings. Upon further inspection of the roof, CPBOs discovered 20 packages concealed within the roof of the vehicle. A random package was probed and revealed a substance that field tested positive for the characteristics of cocaine. The total approximate weight of the packages found within the vehicle is 24.54 kilograms (54.10 pounds).

18. I was notified of LUNA-Mejia's arrest and responded to the San Ysidro POE, where I made contact with LUNA-Mejia and was provided with a box of her seized personal belongings. Among those belongings was the **Target Device**.[1]

19. During a post-Miranda interview, LUNA-Mejia denied knowledge of the narcotics in the vehicle. LUNA-Mejia explained she was going to Plaza Las Americas to shop. I confronted LUNA-Mejia with the legitimacy of the information she provided, and she subsequently requested an attorney. At that time, the interview ended.

20. LUNA-Mejia was arrested and charged with violation of Title 21 U.S.C. §§ 952 and 960, importation of a controlled substance. LUNA-Mejia was subsequently booked into the Metropolitan Correction Center in San Diego, California for further criminal proceedings.

21. Given the facts surrounding the arrest of LUNA-Mejia, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activity of LUNA-Mejia will be found

---

[1] It is not clear from the CBPOs' reports whether the **Target Device** was found on LUNA-Mejia's person or in her vehicle. However, through my training and experience, I know that when a person is taken to the security office at a POE and that person's vehicle is searched, CBPOs will gather all of the person's personal effects and secure them in one location. If that person is subsequently arrested, then those personal effects are seized and provided to the HSI case agent.

*Affidavit in Support of Search Warrant*                               7

in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import cocaine, or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance from Mexico into the United States;

    e. tending to identify the movement of proceeds associated with the trafficking of cocaine, or some other federally controlled substance that was imported from Mexico into the United States;

    f. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

22. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of LUNA-Mejia, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses,

appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from May 18, 2019, up to and including August 19, 2019, which was the day following LUNA-Mejia's arrest.

## **METHODOLOGY**

23. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device**

and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that LUNA-Mejia used the **Target Device** to facilitate violations of Title 21 U.S.C. §§ 952, 960 and 963. Because the **Target Device** was promptly seized following the arrest of LUNA-Mejia at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by her continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from May 1, 2019, up to and including August 19, 2019.

27. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

NICHOLAS A. ZELINSKY
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this ___ day of September, 2019.

THE HON. BARBARA L. MAJOR
United States Magistrate Judge

*Affidavit in Support of Search Warrant*          10

# Attachment A

## *Item to be Searched*

The item to be searched is as follows:

        Samsung Cellular Telephone
        Model No. A510M
        IMEI 356017072637238
        ("**Target Device**")

The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, San Diego, California 92101.

# Attachment B

## *Items to be Seized*

Authorization to search the cellular/mobile telephones and tablet described in Attachment A (the "**Target Device**") includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones and tablet for evidence described below. The seizure and search of the cellular/mobile telephones and tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones and tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from May 18, 2019 up to and including August 19, 2019:

a. tending to indicate efforts to import cocaine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    a. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved

in the activities described above, which are evidence of violations of Title 21 U.S.C. §§ 952, 960 and 963.